[No. A066362. First Dist., Div. Two. Nov. 9, 1995.]

FAMILY PLANNING SPECIALISTS MEDICAL GROUP, INC., et al.,
Plaintiffs and Respondents, v.
ROBERT POWERS, Defendant and Appellant.

1562

## COUNSEL

Michael Millen for Defendant and Appellant.

Smith, Merrill & Peffer and Mary B. Yudien for Plaintiffs and Respondents.

## OPINION

**PHELAN, J.**—Appellant Robert Powers (Powers) contends that the trial court abused its discretion by denying his request for attorney fees after respondents Family Planning Specialists Medical Group, Inc., Carl Watson, and Paul Wright (collectively hereinafter respondents) voluntarily dismissed a complaint by which they had sought injunctive and monetary relief for Powers's distribution of leaflets respondents alleged to be libelous. Specifically, in their complaint, respondents claimed that Powers had threatened to and did distribute leaflets in which he falsely stated that the individual respondents, both of whom are board-certified obstetrician-gynecologists, specialized in late-term abortions, used a controversial abortion procedure known as "D&X" (the acronym used for the "dilatation and extraction" procedure), and performed abortions after the second trimester of pregnancy. We conclude that there is substantial support for the trial court's finding that Powers's defense of this action did not confer any "significant benefit . . .

on the general public or a large class of persons" as required by Code of Civil Procedure section 1021.5,[1] and that the court did not, therefore, abuse its discretion by denying his request for attorney fees. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

For several years before the instant action was commenced, Powers engaged in various types of public, anti-abortion protest activity, including protests directed at respondent Family Planning Specialists Medical Group, Inc. (hereinafter Family Planning Specialists) and its patients. On July 23, 1993, in Family Planning Specialists Medical Group, Inc. v. Powers (Super. Ct. Alameda County, No. 663820-5), the Honorable Joseph Carson entered a permanent injunction against Powers and his wife, Nancy, prohibiting them from photographing and verbally harassing patients of Family Planning Specialists, from obstructing ingress or egress to its premises, and from shouting, screaming, chanting or otherwise interfering with Family Planning Specialists' ability to provide safe and proper health care services to its patients.

On August 18, 1993, Drs. Wright and Watson received letters from Powers stating that, if they did not stop performing abortions, he would distribute a leaflet advising recipients that the doctors performed the "D&X" abortion procedure. As graphically depicted on Powers's proposed flier, the D&X procedure involves a partial breech extraction of a late-term fetus, leaving the head inside the uterus, followed by an incision at the base of the fetus's skull and aspiration of the skull contents. In uncontradicted, sworn testimony submitted to the trial court, Drs. Wright and Watson stated that neither they nor any other physician employed at their clinic has ever used the D&X procedure.

Drs. Wright and Watson were alarmed by Powers's letter, in part, because in February 1993 a national anti-abortion publication called *Life Advocate* had included their names in a list of so-called "Doctors from Hell," that is, physicians the publication labeled as "late-term abortion specialists," and one of the six other physicians targeted in the article was shot and wounded the day after Drs. Wright and Watson received Powers's letter.[2] Two days later, Dr. George Patterson, another physician who performed abortions, was

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The same day Powers wrote his letter, a Roman Catholic priest named David Trosch had received national attention for trying to place an advertisement in an Alabama newspaper, in which the priest declared that murder of doctors who perform abortions is "justifiable homicide."

shot and killed. Drs. Wright and Watson alleged that they feared Powers's literature would inflame his readers to commit violence against them or other employees of Family Planning Specialists.

On October 13, 1993, after receiving confirmation that Powers—using the name "Pro-Life Warrior"—had begun distributing a modified version of the flier, respondents filed the instant action seeking a temporary restraining order, a preliminary injunction, and damages for interference with prospective business advantage, trade libel, libel per se, ordinary libel, extortion, and false light. The modified version of the flier labeled Drs. Wright and Watson as "baby killers," and included the following statement: "Although Family Planning Specialists claim not to use the 'D&X' . . . abortion technique . . . , several factors will put pressure on them to use this revolutionary abortion/infanticide procedure." Respondents maintain that this statement implied they actually performed the D&X procedure, but were lying when they denied it.

The trial court issued the temporary restraining order prepared by respondents' attorney with only minor changes, and set the matter for a hearing on the preliminary injunction on November 5, 1993. However, the parties stipulated to continue the hearing to November 18 in order to discuss a possible settlement.

Meanwhile, in violation of the temporary restraining order, Powers continued to distribute the leaflet, and was found to be in contempt of court on November 18, 1993. The court ordered Powers to pay sanctions to respondents in the amount of $1,000, and to serve three days in county jail. Initially, the court suspended the jail sentence, but reinstated it when Powers refused to pay the monetary sanctions as ordered.[3]

Respondents' motion for preliminary injunction came on for hearing on November 18, 1993. After extensive oral argument, the trial court took the matter under submission and ultimately denied respondents' request. The trial court did not issue a statement of decision setting forth the basis for its decision. Thereafter, Powers failed timely to respond to the complaint and a default was entered on November 19. Powers brought a motion to set aside the default based on attorney error. His motion was granted on February 8, 1994, with the condition that he pay respondents sanctions in the amount of $350.

[3]On January 24, 1994, Powers filed a petition for writ of certiorari (*Powers* v. *Superior Court* (Jan. 24, 1994) A064434 [nonpub. opn.]) in this court, challenging the trial court's contempt order. Since the temporary restraining order had been dissolved and the jail sentence had been served, we denied the writ as moot on February 23, 1994.

Concurrent with his motion to set aside the default, Powers brought a motion to strike the complaint pursuant to section 425.16, the so-called "anti-SLAPP[4] suit" statute (see *Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 858-859 [44 Cal.Rptr.2d 46]), on the grounds that the respondents' complaint improperly infringed upon his free speech rights. The trial court denied this motion, necessarily finding either that respondents' causes of action against Powers did not "aris[e] from any act of that person in furtherance of the person's right of petition or free speech," or that there was a "probability that the [respondents would] prevail" on their claims at trial. (§ 425.16, subd. (b).) Powers did not seek review of the trial court's order denying his motion to strike the complaint.

On March 7, 1994, respondents voluntarily dismissed their complaint without prejudice. On March 21, Powers filed a memorandum of costs and a motion for attorney fees pursuant to section 1021.5, seeking fees in the amount of $5,865.57. Powers asserted that he was the "successful party" within the meaning of section 1021.5, and that he had enforced an important right affecting the public interest. At a hearing on the motion, Powers's attorney asked for specific findings on each of the elements of an award under the statute. The trial court denied Powers's motion for attorney fees and specifically found that Powers's "defense of the action did not convey any significant benefit on the public at large or on any identifiable group. Therefore, defendant has not met the criteria of [section] 1021.5." The court also ordered that the $350 sanctions owing to respondents would be offset against an award of $444 for costs. This timely appeal followed.

## II. DISCUSSION

■■■ Powers's sole contention on appeal is that the trial court abused its discretion when it refused to award him attorney fees pursuant to section 1021.5. That section provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (*Ibid.*) ■■■ Section 1021.5 is a codification of the "private attorney general doctrine" adopted by the California Supreme Court in *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]. (*Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d

---

[4]SLAPP is the acronym for Strategic Lawsuit Against Public Participation.

311, 317 [193 Cal.Rptr. 900, 667 P.2d 704]; *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200].)

The cases interpreting section 1021.5 have established a three-prong test for determining whether an award of attorney fees may be entered in favor of a "successful party."[5] (*Ibid.*) Under that test, we must inquire whether: "(1) the action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement make the award appropriate." (*Planned Parenthood* v. *Aakhus* (1993) 14 Cal.App.4th 162, 169-170 [17 Cal.Rptr.2d 510], citing § 1021.5 and *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at pp. 933-935.) Whether the moving party has proved each of these prerequisites for an award of attorney fees pursuant to section 1021.5 is best decided by the trial court, and the trial court's judgment on this issue must not be disturbed on appeal "unless the appellate court is convinced that it is clearly wrong and constitutes an abuse of discretion." (*Planned Parenthood* v. *Aakhus, supra,* 14 Cal.App.4th at p. 170; see also *Ciani* v. *San Diego Trust & Savings Bank* (1994) 25 Cal.App.4th 563, 571 [30 Cal.Rptr.2d 581] [appellate court may not disturb ruling on section 1021.5 motion unless the record establishes there is no reasonable basis for trial court's decision].)

Powers is correct in noting that section 1021.5 does not distinguish between plaintiffs and defendants. (*County of San Luis Obispo* v. *Abalone*

---

[5]The trial court did not address respondents' argument that Powers was not the "successful party" in this litigation. Had it done so under the applicable standard by "critically analyz[ing] the surrounding circumstances of the litigation and pragmatically assess[ing] the gains achieved by a particular action" (*Leiserson* v. *City of San Diego* (1988) 202 Cal.App.3d 725, 736-737 [249 Cal.Rptr. 28]), the trial court would have been fully justified in denying Powers's request for attorney fees solely on the basis that he did not qualify as a "successful party." Even taking the view most favorable to Powers's position, this record discloses—at most—a complete stalemate between the parties. Respondents obtained a temporary restraining order against distribution of the modified leaflet, and a contempt citation against Powers when he continued distributing it. Powers defeated respondents' request for a preliminary injunction, most likely because the trial court was hesitant to enter an order constituting a prior restraint on his speech. Nevertheless, as we discuss below, the disposition of Powers's motion to strike the complaint can only mean the trial court found that the action did not implicate any legitimate First Amendment interests, or that respondents had established a "probability" of prevailing at trial on their claims for monetary relief. The fact that the trial court found Powers to be the "prevailing party" for the purpose of awarding non-fee costs (§§ 1032, 1033.5), does not change our view that there is substantial doubt whether Powers was a "successful party" for purposes of awarding attorney fees under the private attorney general doctrine. (See *International Industries, Inc.* v. *Olen* (1978) 21 Cal.3d 218, 221-222 [145 Cal.Rptr. 691, 577 P.2d 1031] [entitlement to attorney fees is not to be found under section 1032, and not to be confused with costs awarded pursuant to section 1033.5].)

*Alliance* (1986) 178 Cal.App.3d 848, 869 [223 Cal.Rptr. 846] [hereinafter *Abalone Alliance*]; see also *Hull* v. *Rossi* (1993) 13 Cal.App.4th 1763, 1768 [17 Cal.Rptr.2d 457].) ▇▇ Powers is also correct that, as a general matter, free speech rights are included among those recognized as "important right[s] affecting the public interest." (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 319.) ▇▇ What he has failed to show, however, is that his defense of this libel action actually resulted in the enforcement of his or anyone else's free speech rights. Powers was and is free to distribute nonlibelous leaflets and to stage peaceful protests against abortion providers, including respondents. Neither Powers's defense nor the equivocal disposition of the lawsuit had any impact on these lawful expressive activities. He did not, therefore, enforce an important right affecting the public interest. (See *California Common Cause* v. *Duffy* (1987) 200 Cal.App.3d 730, 745 [246 Cal.Rptr. 285] ["Litigation which results in only 'very limited success' or involves complaints of 'no real substance or validity' does not enforce an important right affecting the public interest."].)

Had this action posed a serious threat to Powers's legitimate rights to speak out on the important and controversial issue of abortion, his recourse was a motion to strike the complaint under section 425.16, subdivision (b). Had he succeeded in showing that he was being required to litigate simply to preserve those rights, he would have been entitled to both a dismissal of the action and an award of attorney fees under section 425.16, subdivision (c). That is not what happened in this case. Rather, the respondents' evidence was sufficient to show, either as a matter of law or—at a minimum—to a prima facie level, that Powers's conduct fell outside the protective scope of the first amendment, and gave rise to meritorious claims (at least for monetary relief) of libel and intentional interference with business. (See *Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 823-825 [33 Cal.Rptr.2d 446] [to prevail on section 425.16 motion, plaintiff must make a prima facie showing of facts that will support a judgment in plaintiff's favor, including proof that negates constitutional defenses].)

Even assuming he was successful in securing some marginal enhancement of his own free speech rights, however, Powers was not entitled to recover attorney fees unless he also showed that he thus conferred a "significant benefit . . . on the general public or a large class of persons." (§ 1021.5.) ▇▇ The significance of the benefit conferred by a party seeking a section 1021.5 fee award must be determined by the trial court "from a practical perspective" (*Bartling* v. *Glendale Adventist Medical* Center (1986) 184 Cal.App.3d 97, 103 [228 Cal.Rptr. 847]; *Lucchesi* v. *City of San Jose* (1980) 104 Cal.App.3d 323, 336 [163 Cal.Rptr. 700]), and based on

"a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case" (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at pp. 939-940). ██ In the factual and procedural context of this case, the trial court disagreed with Powers's assessment of the significance and impact of his accomplishments and so do we.

This case is closely analogous to *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158 [188 Cal.Rptr. 104, 655 P.2d 306]. In one of two actions consolidated in that case, the California Coastal Commission (the Commission) had determined that the owners of a particular parcel of ocean-front property were required to obtain a permit to improve an existing seawall. (*Id.* at pp. 163-164.) The Commission granted the permit but imposed a condition that the property owners dedicate an easement for public access across a portion of their land. (*Id.* at p. 164.) The property owners successfully petitioned the superior court for writ of mandamus directing the Commission to set aside the condition. The Commission sought review of the trial court's ruling but ultimately moved to dismiss its appeal, admitting that the evidence of record was insufficient to support the conditions under its then current interpretation of the public access requirements of the applicable statutes. (*Ibid.*) The property owners then brought a motion seeking an award of their appellate attorney fees pursuant to section 1021.5.

Observing that ". . . the primary effect of the judgment was to invalidate the particular permit condition imposed in light of the limited facts" presented with respect to a particular parcel of land, our Supreme Court held that the property owners had not conferred a significant benefit on the general public or a large class of persons and, thus, as a matter of law, were not entitled to a fee award under section 1021.5. (*Pacific Legal Foundation* v. *California Coastal Com., supra,* 33 Cal.3d at p. 167.) The court reasoned as follows: "The decision vindicated only the rights of the owners of a single parcel of property. It in no way represents, for example, a ringing declaration of the rights of all or most landowners in the coastal zone, nor will it 'certainly lead to the Commission's abandoning its prior unconstitutional practices of conditioning statutorily authorized permits upon an individual's surrender of his private property,' as the plaintiffs contend." (*Ibid.*) In essence, the court found that the property owners had succeeded in enforcing only their own interests, and those only in the narrow factual circumstances of the case.

Similarly, to the extent Powers can claim he succeeded in vindicating his free speech rights, the trial court was justified in finding that Powers's

"success" in the litigation was very narrow, benefiting only himself. The most generous reading of Powers's accomplishment was that he protected his own right to circulate a particular type of leaflet vilifying respondents for performing late-term abortions. In the factual circumstances here presented, however, he was obviously treading very close to the line separating protected expression from libel. It certainly cannot be said that by obtaining a dismissal of the action, Powers won a "ringing declaration" of the rights of abortion opponents to conduct the same or a similar campaign. Powers did not even purport to represent anyone other than himself in the proceedings below. Although respondents named Powers and "Pro-Life Warriors" as defendants in this action, Powers was the *only* defendant to appear. Indeed, there is nothing in this record to indicate that "Pro-Life Warriors" is anything more than an also-known-as Powers used in conducting his leafleting campaign.[6]

■ Of course, "evidence of the size of the population benefited by a private suit is not always required. The substantial benefit may be conceptual or doctrinal, and need not be actual and concrete, so long as the public is primarily benefited." (*Planned Parenthood* v. *Aakhus, supra,* 14 Cal.App.4th at p. 171, citing *Braude* v. *Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994, 1011 [223 Cal.Rptr. 914].) In this case, however, the trial court could quite reasonably conclude that it was Powers himself who was "primarily"—if not solely—benefited by the litigation.

■ As our Supreme Court has repeatedly observed, the Legislature did not intend section 1021.5 to authorize an attorney fees award in every case involving a violation of an important statutory or constitutional right. (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 319, fn. 7 ["Of course, not all lawsuits enforcing constitutional guarantees will warrant an award of fees."]; *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 939 ["[T]he Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation."].) A fortiori, the Legislature did not intend to authorize an award of attorney fees in every case in which first amendment issues are only marginally involved, or where the moving party merely raises first amendment defenses and then obtains an equivocal result. ■ In this case, the trial court was justified in finding that neither the public nor any large class of people benefited from Powers's conduct inside or outside the courtroom.

---

[6]On appeal, Powers contends that by defending himself against respondents' complaint, he "conferred a significant benefit" on those who might *in the future* read his leaflets. He cites no legal authority for this proposition and, beyond his own subjective evaluation the merits of his position and the quality of his work product, there is nothing in this record to support Powers's contention factually.

*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d 311, is not to the contrary. In *Press,* the trial court awarded attorney fees to an organization that had successfully challenged a grocery market's refusal to permit signature gathering for a statewide initiative in front of the store. On appeal, the Supreme Court held that the plaintiff's litigation satisfied all the applicable requirements of section 1021.5 and that the trial court did not abuse its discretion in awarding attorney fees. (34 Cal.3d at p. 321.) The defendant did not dispute that the plaintiff's action had "resulted in the enforcement of an important right" (*id.* at p. 318), but did contend that no "significant benefit" was conferred on "the general public or a large class of persons" (*id.* at pp. 318-319). The Supreme Court disagreed, holding that enforcement of the plaintiff's free speech and petition rights "effectuated fundamental constitutional principles," and directly benefited "a large class of persons" in that the plaintiffs were able to use the injunction obtained against the defendant to gain access to additional shopping centers throughout the state to gather signatures. (*Id.* at pp. 319-320.) No such relief was obtained in the instant case, and there was no showing that anyone other than Powers was conducting or seeking to conduct the type of targeted leafleting campaign that gave rise to respondents' claims.

This case is also distinguishable from *Abalone Alliance, supra,* 178 Cal.App.3d 848. In that case, the County of San Luis Obispo and certain private entities and individuals sought approximately $3 million in damages allegedly sustained when the defendants (the Abalone Alliance, American Friends Service Committee, Greenpeace, and three individuals) staged a mass protest to prevent the Diablo Canyon nuclear power plant from going into operation. The Second District affirmed the judgment of the trial court, which had sustained the defendants' general demurrer to all the alleged causes of action and ordered the county to pay the defendants $82,500 in attorney fees pursuant to section 1021.5. (178 Cal.App.3d at pp. 854-864.) With respect to the latter order, the Second District held that the trial court's express finding that the litigation helped preserve the fundamental right of citizens to organize and participate in a mass political protest necessarily implied a finding that a "significant benefit" was conferred on the general public or a large class of people. (*Id.* at p. 866.) Again, Powers did nothing to protect or advance the rights of anyone other than himself. By so concluding, the trial court did not clearly err or abuse its discretion, and we, thus, see no reason to disturb the trial court's denial of Powers's request for attorney fees.[7]

---

[7]We also find it significant that *Abalone Alliance, supra,* 178 Cal.App.3d 848, was decided before the anti-SLAPP statute was enacted in 1992. (Stats. 1992, ch. 726, § 2.) Section 425.16

## III. Conclusion

For all the foregoing reasons, the judgment of the trial court is affirmed. Costs to respondents.

Kline, P. J., and Haerle, J., concurred.

A petition for a rehearing was denied December 6, 1995, and the opinion was modified to read as printed above.

---

was adopted, at least in part, to redress the type of claim Powers and the defendants in *Abalone Alliance* made under section 1021.5, i.e., that they were forced to defend against meritless litigation that was filed to "dissuade or punish the exercise of [their] First Amendment rights . . . ." (See *Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co., supra,* 37 Cal.App.4th at p. 858.) As we have noted, if the instant action posed a genuine threat to Powers's free speech rights, he—unlike the defendants in *Abalone Alliance*—was entitled to bring a special motion under section 425.16, subdivision (b), and, if successful, to recover his attorney fees pursuant to section 425.16, subdivision (c). Having failed on that front, it is not at all surprising that the trial court also rejected his claim for attorney fees under section 1021.5.