[No. F044896. Fifth Dist. May 25, 2005.]

PROTECT OUR WATER et al., Plaintiffs and Appellants, v.
COUNTY OF MERCED, Defendant and Respondent;
CALAVERAS MATERIALS, INC., Real Party in Interest and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

## COUNSEL

Rose M. Zoia for Plaintiffs and Appellants.

Ruben E. Castillo, County Counsel, James N. Fincher, Deputy County Counsel; Lozano Smith, Thomas J. Riggs, David J. Wolfe and Maiya Yang for Defendant and Respondent.

Mason, Robbins Gnass & Browning and William E. Gnass for Real Party in Interest and Respondent.

## OPINION

**DIBIASO, J.**—In March 2001, appellants Protect Our Water, San Joaquin Raptor Rescue Center, and Merced Valley River Association (collectively POW), filed a petition for writ of mandamus setting aside a conditional use permit issued by respondent County of Merced (County). The permit allowed real party in interest Calaveras Materials, Inc. (CMI), to conduct surface mining operations (project) at a site known as Woolstenhulme Ranch. The petition also sought mandamus setting aside the certification of the environmental impact report (EIR) for the project and alleged that County had violated the California Environmental Quality Act (CEQA)[1] and the Surface Mining and Reclamation Act of 1975 (SMARA)[2] in approving the project. The trial court denied the petition in July 2002, and POW appealed to this court.

In July 2003, we reversed the trial court's order denying the petition and directed the trial court to issue a peremptory writ of mandate to the County to set aside its approval of the project. (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362 [1 Cal.Rptr.3d 726] (Opinion).) Our Opinion did not address the merits of the substantive issues raised by POW but instead concluded that the administrative record was so inadequate that the County could not demonstrate on appeal that it had made the CEQA findings required for approval of the project. Although we chided POW (who had elected to

---

[1] Public Resources Code section 21000 et seq.
[2] Public Resources Code section 2710 et seq.

prepare the administrative record) for the poor organization of that record and the deficient master index, we placed primary responsibility for the problem-laden record on the County because the County had failed to properly label or draft the documents it was required to prepare in order to satisfy CEQA's requirement of disclosure "to the public the reasons for a project's approval if the project has significant environmental effects." (*Protect Our Water v. County of Merced, supra,* 110 Cal.App.4th at p. 373.)[3]

On remand from our decision, appellants moved the trial court for an award of attorney fees under Code of Civil Procedure section 1021.5[4] and asserted that our Opinion required the County to void its certification of the EIR prepared for the project. In a judgment dated January 30, 2004, the trial court (1) directed the issuance of a peremptory writ of mandate commanding the County to set aside its approval of the project, (2) found that nothing in our Opinion required the County to set aside its certification of the EIR, (3) ordered that POW recover costs in the amount of $1,490.21, and (4) denied POW attorney fees and ordered that each side bear its own fees. On the same date,[5] the trial court issued a peremptory writ setting aside the County's approval of, and halting all activities on, the project. The writ specified that the County's return be filed within 14 days and that it demonstrate compliance with CEQA by an adequate, rationally organized administrative record that proved the necessary CEQA findings had been made. The writ also included an order granting in part the County's motion to tax costs and denying POW's motion for attorney fees.

POW filed a notice of appeal from the order denying attorney fees. No appeal was filed from the order directing issuance of the writ (judgment).

---

[3] At oral argument, when County noted that POW prepared the record, Justice Wiseman responded, "But *who created the documents?*" County's attorney stated, "The documents were created from the Planning Commission and from the Board of Supervisors, from the records of *Merced County.*" Justice Wiseman then noted ". . . [POW's attorney] was responsible to prepare the record or opted to prepare the record, *but how can you prepare a record when you have those kind of documents to work with in the first place?*" The Opinion notes the problem was more "fundamental" than organizational and stated that the documents generated by the County were "inadequate for review." (*Protect Our Water v. County of Merced, supra,* 110 Cal.App.4th at p. 372.)

[4] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

[5] The trial court also issued an order vacating an earlier judgment entered after remand as a result of a clerk's error. The earlier judgment was prepared by POW and included an order that the EIR certification be set aside. The trial court determined that this was not required by this court's Opinion and this finding by the trial court has not been challenged on appeal.

## DISCUSSION

### I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II.

POW contends the trial court abused its discretion by finding as a matter of law that POW was not a prevailing party in POW's mandamus action. POW maintains that (1) it was the successful party because it achieved a disposition on appeal that required the setting aside of the County's approval of the project, even if only temporarily, and (2) there was a significant benefit to the public because the County was forced to prepare an adequate record of the environmental review process.

Section 1021.5 provides that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

The threshold requirement for a fee award under section 1021.5 is proof that the fee applicant is a "successful party." (*Urbaniak v. Newton* (1993) 19 Cal.App.4th 1837, 1842 [24 Cal.Rptr.2d 333].) As used in section 1021.5, "successful" is synonymous with "prevailing." (*Urbaniak v. Newton, supra,* 19 Cal.App.4th at p. 1843, fn. 4.) An award of attorney fees under section 1021.5 is appropriate when the plaintiff's lawsuit was a catalyst that motivated the defendant to provide the primary relief sought and when the lawsuit vindicated an important public interest. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 570 [21 Cal.Rptr.3d 31, 21 Cal.Rptr.3d 331]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1291–1292 [240 Cal.Rptr. 872, 743 P.2d 932].) Determining whether a party is "successful" within the meaning of section 1021.5 requires an analysis of the surrounding circumstances of the litigation and a pragmatic assessment of the gains achieved by a particular action. (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 685 [186 Cal.Rptr. 589, 652 P.2d 437].)

---

*See footnote, *ante,* page 488.

■ The trial court here concluded there was no prevailing party in POW's mandate proceeding. (See *Deane Gardenhome Assn. v. Denktas* (1993) 13 Cal.App.4th 1394, 1398 [16 Cal.Rptr.2d 816] ["Typically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought"].) Generally, the question of whether a party is a prevailing party is best left to the trial courts. (*Schmier v. Supreme Court* (2002) 96 Cal.App.4th 873, 877–878 [117 Cal.Rptr.2d 497] [whether one is a prevailing party for purposes of § 1021.5 is a factual pragmatic inquiry generally left to the trial court]; *Nestande v. Watson* (2003) 111 Cal.App.4th 232, 238 [4 Cal.Rptr.3d 18] [whether a party has met the statutory requirements for an award of attorney fees is a question best decided by the trial court in the first instance].) Under the circumstances here, however, we are in as good a position as, and perhaps in a better position than, the trial court to decide the issue because its resolution turns on the import of this court's Opinion. (*Leiserson v. City of San Diego* (1988) 202 Cal.App.3d 725, 738 [249 Cal.Rptr. 28] [appellate court evaluates public significance of own opinion]; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 8 [232 Cal.Rptr. 697] [appellate court is as well positioned as the trial court to determine if its earlier opinion vindicated an important right affecting the public interest and yielded a significant benefit].)

■ We agree with POW that it was the prevailing party in the mandate proceeding. The case did not result in a stalemate between the parties. Reduced to basics, the County was the loser. POW sought an order setting aside the County's approval of the project. Our Opinion directed exactly that result. POW also sought an order setting aside the County's certification of the EIR. Although this court did not direct that result because we did not reach the merits of the issue on appeal, and although the trial court concluded our Opinion did not require such a result, we did state that the administrative record as it stood was inadequate to support the certification. This was tantamount to a determination that the certification could not stand on the then current record. ■ On this topic, we pointed out that the final step in the EIR process is certification, which affirms that the agency has reviewed the EIR and such review complies with CEQA (*Protect Our Water v. County of Merced, supra,* 110 Cal.App.4th at p. 372), and we concluded that the inadequate record made it impossible to confirm that the County made the key findings required by CEQA, let alone confirm that any such findings were supported by substantial evidence (*Id.* at p. 373). We ultimately ordered that the County's approval of the project be vacated unless and until this requirement was satisfied. Had POW not challenged the County's noncompliance with CEQA, albeit on other grounds, we would not have been required to consider the adequacy of the record and therefore would not have

rendered the opinion we did. We did not reach the merits of POW's claims because there was another ground upon which to grant the requested relief—the inadequate substantive record.[7]

▮ For two reasons we disagree with the County that, because POW never complained about the state of the administrative record, there was no causal connection between POW's lawsuit and the public benefit incurred. (*Maria P. v. Riles, supra,* 43 Cal.3d at p. 1291 ["Successful party" status requires a causal connection between the plaintiff's lawsuit and the relief obtained]; *Schmier v. Supreme Court, supra,* 96 Cal.App.4th at p. 877 [accord]; *Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 171 [17 Cal.Rptr.2d 510] [question is whether underlying action contributed substantially to remedying conditions at which it was directed].) First, POW did complain in its briefs on the prior appeal that it had trouble identifying the County's findings, even if this was not the core of POW's contentions. Second, the key in evaluating the success of the litigation is the ultimate impact of the action, not the manner of its resolution. It is "not necessary [that] a party have made the particular legal arguments which vindicated the public right affecting the public interest. It is enough that but for the party's legal action the right would not have been vindicated." (*Los Angeles Police Protective League v. City of Los Angeles, supra,* 188 Cal.App.3d at p. 13, fn. 1; see also *In re Head* (1986) 42 Cal.3d 223, 228–229 [228 Cal.Rptr. 184, 721 P.2d 65] ["How the party achieves the goal of enforcing the right in question is not determinative of the right to an award of attorney fees under § 1021.5. The impact of the litigation is."].)

▮ POW's mandate action also had a significant positive impact upon the interests of the public. Our Opinion decided that the County had not complied with the letter or spirit of CEQA because the County did not produce an administrative record adequate for review of the County's decisions leading to the approval of the project. By publishing that Opinion, we announced that complete recordkeeping during the CEQA review process is a matter of significant public concern.[8] Specifically, we stated, "to anyone who will listen: CEQA has very specific requirements regarding what findings must be in the record" (*Protect Our Water v. County of Merced, supra,* 110

---

[7] We do not express any opinion about whether the County can comply or has complied with the instruction to produce on remand an appropriate record.

[8] Publication of the Opinion alone supports a conclusion that the result was of significant statewide public interest. (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318, 319 [193 Cal.Rptr. 900, 667 P.2d 704] [publication guarantees that vital constitutional and statutory principles are available to all]; *Leiserson v. City of San Diego, supra,* 202 Cal.App.3d at p. 737 [if an opinion is published because it satisfies the criteria for publication under rule 976 et seq. of the California Rules of Court, such status is probative of whether the decision clearly vindicates an important public right]; *Los Angeles Police Protective League v. City of Los Angeles, supra,* 188 Cal.App.3d at p. 12 [accord].)

Cal.App.4th at p. 365), and we addressed at length the public policy considerations supporting, and the public benefits derived from, the requirement that a governmental agency produce a written record sufficient to support its environmental decisions. (*Id.* at pp. 369–373.) We would be confident in finding a significant public benefit in the outcome of POW's mandate proceeding if our Opinion had no more effect than to prompt the County to alter for the better its methods of creating and managing its CEQA records.

Furthermore, we are particularly troubled by the County's misconstruction, in the trial court and on this appeal, of our Opinion and by the County's assertion that POW should not benefit "from the inadequacy of the administrative record [POW] created." We unequivocally stated in our Opinion and during oral argument that the County, not POW, bore the primary responsibility for the inadequate record. Although our Opinion and comments at argument included complaints about the poor organization and lack of index in the record—for which POW was to blame—we stated explicitly that the critical inadequacy of the record was more fundamental than organizational. For example, in our Opinion we stated:

"POW elected to prepare the administrative record in this case. (See [Pub. Resources Code,] § 21167.6, subd. (b)(2).) Therefore, the fault in the poor organization and indexing of the record plainly falls on POW. But poor organization and a deficient master index alone do not necessarily make for an inadequate record. The problems with the record here arise not simply from disorganized, inadequately indexed documents. *The problems are more fundamental. The documents generated by the County are inadequate for review.* It is impossible to identify many of the documents as the County has failed to properly label them, and some documents appear incomplete. In addition, in the confusion of this record, it is often difficult to differentiate between documents and attachments to those documents. *We find it inconceivable that, given the scope and magnitude of this project, the documents comprising the administrative record are so defectively drafted. This responsibility fell squarely on the County.* (See § 21081, subd. (a)(3); [CEQA] Guidelines [Cal. Code Regs., tit. 14], § 15091; see also [Pub. Resources Code] § 21167.6, subd. (b)(2) [agency charged with certifying accuracy of record of administrative proceedings prepared by petitioner].) And we hold the County to it. Were we not to do so, we would be defeating one of the basic purposes of CEQA—to disclose to the public the reasons for a project's approval if the project has significant environmental effects. (See [CEQA] Guidelines [Cal. Code Regs., tit. 14], § 15002, subd. (a)(4).)" (*Protect Our Water v. County of Merced, supra,* 110 Cal.App.4th at pp. 372–373, italics added.)

We intended by our Opinion to educate all those governmental agencies charged with the responsibility to implement CEQA, including the County, about the pivotal importance of a complete administrative record of the crucial decisions made during the CEQA process.[9] Though proper organization and indexing surely is of assistance in the appellate review of such decisions, these attributes do not make up for a substantially insufficient record.[10]

For all these reasons, we are unable to affirm the trial court's order denying POW its attorney fees under section 1021.5. (*Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561, 1567 [46 Cal.Rptr.2d 667] [trial court's judgment may not be disturbed unless the appellate court is convinced that it is clearly wrong].) Instead, we conclude as a matter of law that POW was the prevailing party in the mandate proceeding, that POW has satisfied all the elements entitling it to an award of fees, and that there is no reasonable basis in this record for denying POW's fee motion. (*Planned Parenthood v. Aakhus, supra,* 14 Cal.App.4th at pp. 172–173 [§ 1021.5 permits an award of fees to the successful party in any action resulting in the enforcement of an important right—whether constitutional, statutory or other—affecting the public interest, where the cost of the litigation is disproportionate to successful party's individual stake in the outcome]; *Nestande v. Watson, supra,* 111 Cal.App.4th at pp. 238–239 [reversal is required where there is no reasonable basis for discretionary ruling].)

Because the amount of the fees to be awarded to POW should be decided by the trial court, we will reverse and remand for that purpose.

---

[9] To permit adequate appellate review of CEQA decisions, the final findings of the responsible governmental entity must be labeled as the agency's final findings. If staff recommendations are adopted, there must be a clear indication in the record identifying precisely which recommendations were adopted and which were rejected or modified. There must also be evidence of the public agency's actual consideration of the alternatives and mitigation measures so that the public may know how the public agency arrived at its decision. (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 113, 133–134 [65 Cal.Rptr.2d 580, 939 P.2d 1280]; *Protect Our Water v. County of Merced, supra,* 110 Cal.App.4th at pp. 372–373.)

[10] The trial court itself acknowledged that the primary responsibility for the record's inadequacy rested with the County for "its incredibly sloppy record-keeping procedure, or more accurately, the lack thereof." The trial court also noted that, in its experience, "the random selection of documents and throwing them into boxes is the way the County's planning department records are kept." If the trial court's experience presents an accurate picture of the County's administrative practices—which confirms this court's conclusion about how the records were mismanaged in this case—POW's petition and our resulting Opinion assuredly conveyed a significant benefit upon the residents of Merced County and upon others doing business with Merced County.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to (1) vacate its order denying POW's motion for an award of attorney fees, and (2) enter a new order granting such motion, including, after a hearing to be set as soon as practicable, a statement of the amount of the fees awarded to POW, which amount shall be based upon such evidence and authorities as may be presented by the parties at the hearing. Costs on this appeal are awarded to appellants.

Ardaiz, P. J., and Vartabedian, J., concurred.

On June 21, 2005, the opinion was modified to read as printed above.