Filed 12/30/14  Washoe Meadows Community v. Cal. Dept. of Parks and Rec. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WASHOE MEADOWS COMMUNITY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF PARKS AND RECREATION et al., <br><br> Defendants and Respondents. | A139197 <br><br> (Alameda County Super. Ct. No. RG11605742) |
| WASHOE MEADOWS COMMUNITY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF PARKS AND RECREATION et al., <br><br> Defendants and Appellants. | A140041 <br><br> (Alameda County Super. Ct. No. RG11605742) |

In this consolidated appeal, the California Department of Parks and Recreation (Department) and the State Park and Recreation Commission (Commission) challenge an order awarding attorney fees to Washoe Meadows Community (Washoe) pursuant to Code of Civil Procedure section 1021.5 (section 1021.5) in a mandate proceeding under the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.).  They contend the award was unauthorized because Washoe was not a "successful party" as required for a recovery of fees under section 1021.5, having failed to demonstrate it was a "catalyst" causing the Department and the Commission to substantially change their behavior and provide the *primary* relief sought through

1

litigation. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 560-561 (*Graham*). We agree and reverse. We dismiss Washoe's appeal and cross-appeal as abandoned.

## I. FACTS AND PROCEDURAL HISTORY

The Department has the authority to "administer, protect, develop, and interpret the property under its jurisdiction for the use and enjoyment of the public." (Pub. Resources Code, § 5003.) The Commission, located within the Department (Pub. Resources Code, § 530), has responsibility for establishing "general policies for the guidance of the director [of the Department] in the administration, protection, and development of the state park system" (Pub. Resources Code, § 539) and setting "comprehensive recreational policy" for the state (Pub. Resources Code, § 540).

In 1984, the State of California acquired 777 acres of land encompassing a 1.5-mile stretch of the Upper Truckee River in the southern section of the Tahoe Basin. The Department was charged with managing this property in a manner promoting its environmental and recreational values. The Commission divided the parcel into two units: 608 acres designated as Washoe Meadows State Park (State Park), whose purpose was to preserve and protect a wet meadow, and 134 acres designated as the Lake Valley State Recreation Area (Recreation Area), to allow for the continuing operation of a preexisting golf course. A general plan for the Recreation Area was adopted by the Commission in 1988, which recognized the importance of the golf course as a recreational opportunity and called for the preparation of a river management plan.

Since at least the 1990s, erosion of the river bed of the Upper Truckee River has raised concerns about the habitat for wildlife, the maintenance of the water table, and the depositing of sediment into Lake Tahoe. After studying a number of alternatives, the Department settled on the Upper Truckee River Restoration and Golf Course Reconfiguration Project (the Project), which will reroute sections of the river and relocate part of the golf course. The Project would restore about 45 acres of the golf course to natural habitat and reclassify it as part of the State Park; additionally, 92.5 acres of the

2

State Park would be transferred to the Recreation Area, with about 60 acres of that land being developed as part of the golf course. Other alternatives included taking no action, eliminating the golf course, and reducing the size of the golf course. Because recreational activities such as golf are not permitted in state parks (Pub. Resources Code, § 5019.53), the Project required an adjustment of the boundaries of the State Park and Recreation Area and an amendment of the Recreation Area's general plan.

The Department is the lead agency on the Project for purposes of CEQA.[1] For the project to go forward, the Commission, a responsible agency,[2] was required to (1) adjust the classification of land within the State Park and Recreation Area by modifying the boundary between the two units; and (2) amend the general plan for the Recreation Area. Following Commission approval, implementation of the project would be contingent upon actions by the Department, the Tahoe Regional Planning Agency and the United States Bureau of Reclamation.

In August 2010, the Department released a draft environmental impact report (EIR) for the Project identifying approximately 30 potentially significant impacts requiring mitigation, including impacts to water quality, floodplains, riparian habitat, surface and groundwater, irrigation runoff, water usage and impaired ecological conditions. Four impacts to surface and groundwater during and after construction were deemed "significant and unavoidable." In September 2011, after a period of public comment, the Department released a final EIR for the Project.

On October 18, 2011, the Department adopted a resolution entitled "Certification of the EIR for the Approval of the Upper Truckee River Restoration and Golf Course Reconfiguration Project." It did not include CEQA findings as required under Public Resources Code section 21081, and the Department did not adopt a statement of

---

[1] " 'Lead agency' means the public agency which has the principal responsibility for carrying out or approving a project which may have a significant effect upon the environment." (Pub. Resources Code, § 21067.)

[2] " 'Responsible agency' means a public agency, other than the lead agency which has responsibility for carrying out or approving a project." (Pub. Resources Code, § 21069.)

3

overriding considerations (SOC) or a mitigation, monitoring and reporting program (MMRP). (Cal. Code Regs., tit. 14, §§ 15091, 15093.)[3] The resolution noted two significant effects to water turbidity during and after construction that could not be mitigated to "less than significant" "for which a statement of overriding considerations will be made by the Director [of the Department] when she makes the findings required as a part of the approval of the project following the [Commission]'s approval of the [general plan amendment]." The EIR indicated an MMRP would be developed after project approval. On October 25, the Department filed a notice of determination (NOD) indicating it had approved the Project.

On October 21, 2011, the Commission adopted a resolution (No. 13-2011) approving the reclassification of land and adjustment of boundaries of the State Park and Recreation Area, as well as a second resolution (No. 14-2011) approving the amendment

[3] Public Resources Code section 21081 provides: "[N]o public agency shall approve or carry out a project for which an environmental impact report has been certified which identifies one or more significant effects on the environment that would occur if the project is approved or carried out unless both of the following occur: [¶] (a) The public agency makes one or more of the following findings with respect to each significant effect: [¶] (1) Changes or alterations have been required in, or incorporated into, the project which mitigate or avoid the significant effects on the environment. [¶] (2) Those changes or alterations are within the responsibility and jurisdiction of another public agency and have been, or can and should be, adopted by that other agency. [¶] (3) Specific economic, legal, social, technological, or other considerations . . . make infeasible the mitigation measures or alternatives identified in the environmental impact report. [¶] (b) With respect to significant effects which were subject to a finding under paragraph (3) of subdivision (a), the public agency finds that specific overriding economic, legal, social, technological, or other benefits of the project outweigh the significant effects on the environment."

California Code of Regulations, title 14, section 15091 echoes the requirements of Public Resources Code section 21081 and additionally provides, "(d) When making the findings required in subdivision (a)(1), the agency shall also adopt a program for reporting on or monitoring the changes which it has either required in the project or made a condition of approval to avoid or substantially lessen significant environmental effects."

California Code of Regulations, title 14, section 15093 describes the content of a statement of overriding considerations, and provides it should be "(c) . . . included in the record of the project approval and should be mentioned in the notice of determination."

4

of the Recreation Area's general plan.  The latter resolution stated:  "[A] statement of overriding considerations may be made by the Director [of the Department] when she makes the findings required as a part of the approval of the Project following the Commission's approval of the General Plan Amendment and which impacts are not within the responsibility or jurisdiction of the Commission as they are project-related . . . ."  The Commission filed an NOD on October 25 indicating it had reviewed and approved the general plan amendment and the EIR.

Washoe filed written opposition to the Commission's proposed amendment of the general plan and the adjustment of boundaries.  It disputed that the Department (rather than the Commission) was the lead agency for the Project, challenged the substance of the EIR in a number of respects, argued the draft EIR had provided inadequate information about alternatives to the Project, and criticized the Department's response to the public comments to the draft EIR.  It also challenged the Department's failure to make CEQA findings, issue an SOC, or approve an MMRP at the same time it approved the project.

On November 23, 2011, Washoe filed a petition for writ of mandate (*Washoe Meadows Community v. Department of Parks & Recreation*, Super Ct. Alameda County, 2011, No. RG11605742) (hereafter *Washoe I*) seeking to set aside the October 2011 project approvals.  (Pub. Resources Code, §§ 21168, 21168.5.)  The first cause of action alleged CEQA violations, including substantive and procedural defects in the draft and final EIRs, and the Commission's failure to adopt supporting CEQA findings, an SOC, or an MMRP.  The second cause of action alleged the conversion of any natural landscape into a golf course was inconsistent with the Wildlife Conservation Law of 1947 (Fish & G. Code, § 1300 et seq.).  The prayer for relief asked the court to issue a writ compelling the department and the Commission to set aside the certification of the EIR and approval of the Project and to suspend any activities on the Project.

In January 2012, the Department and the Commission took steps apparently designed to correct any procedural defects in the October 2011 project approvals.  On January 23, the Department passed a resolution approving the Project, which included a

5

statement of factual findings under CEQA, adopted an SOC, and approved an MMPR, the last two documents having been prepared since the October 2011 approvals. This resolution specifically discussed the four "significant and unavoidable" effects cited in the EIR. On January 27, the Commission passed a resolution (No. 3-2012) approving the transfer of land and adjustment of the boundary between the State Park and the Recreation Area and amending the general plan. The resolution referenced and approved the EIR, SOC, and MMPR. NODs were filed January 30.

Washoe filed written objections to the notice provided for the January 2012 approvals, the validity of those approvals in light of the earlier approvals, and the adequacy of the EIR. On February 29, 2012, it filed a second petition for writ of mandate challenging the January approvals (*Washoe Meadows Community v. Department of Parks & Recreation*, Super Ct. Alameda County, 2012, No. RG12619137) (hereafter *Washoe II*). The petition contained four causes of action alleging (1) CEQA violations including the insufficiency of the EIR, (2) violation of the Wildlife Conservation Law in approving a project that would move a portion of the golf course to wilderness lands, (3) a lack of jurisdiction to issue new approvals while the October approvals were still operative, and (4) violations of the Bagley-Keene Open Meeting Act (Gov. Code, §§ 11120-11132).

In February 2013, the parties executed a stipulation in which they agreed (1) the October 2011 approvals were not supported by any CEQA findings, SOC, or MMPR; (2) the October 2011 approvals had no continuing effect in light of the January 2012 approvals; (3) Washoe would dismiss *Washoe I* as well as its claim in *Washoe II* that the Department lacked jurisdiction in January 2012 to reconsider the October 2011 approvals; and (4) Washoe retained the right to seek attorney fees for work performed on *Washoe I* to the extent allowable. The superior court issued an order approving the stipulation and entering a final judgment in *Washoe I*.

Washoe filed a memorandum of costs seeking $1,116.56. The court granted the Department's motion to strike the costs in their entirety on the ground Washoe had not presented sufficient evidence to establish it was a prevailing party under the catalyst

6

theory enunciated in *Graham*, *supra*, 34 Cal.4th 553. The court's order stated its determination was limited to the evidence presented in support of the request for costs and did not preclude Washoe from presenting additional evidence of its prevailing party status in a motion for attorney fees.

Washoe filed a motion for attorney fees in the amount of $169,464.25, based on Code of Civil Procedure section 1021.5 and the catalyst theory enunciated in *Graham*, *supra*, 34 Cal.4th 553.[4] The Department and the Commission opposed the motion, arguing (1) Washoe was not a prevailing party under the catalyst theory because it did not achieve the primary relief it sought; (2) assuming Washoe were a prevailing party, it was not entitled to fees under section 1021.5 because the litigation did not enforce an important right or benefit the public or a large class of persons; and (3) the fees claimed were unreasonable because some of the time was billed after the January 2012 approvals rendered moot the October 2011 approvals challenged in *Washoe I*. The trial court granted Washoe's motion in part and awarded $119,313.50 in attorney fees.

Washoe appealed from the order granting the Department's motion to strike its memorandum of costs (Court of Appeal case No. A139197). The Department and Commission appealed from the order awarding Washoe attorney fees (Court of Appeal case No. A140041), and Washoe filed a cross-appeal in that case. After we consolidated the appeals at the parties' request, Washoe abandoned its appeal and cross-appeal, leaving as the only issue the Department and Commission's challenge to the order awarding Washoe attorney fees.

## II. DISCUSSION

The Department and the Commission contend the fee award cannot stand because section 1021.5 allows only a "successful party" to recover fees and Washoe was not a successful party within the meaning of that statute. We agree.

---

[4] At the hearing on the motion for attorney fees, counsel for Washoe represented that the fees sought did not include time expended on the substantive challenge to the EIR, but were limited to attempts to invalidate the October 2011 approvals based on the lack of CEQA findings, SOC, and MMRP.

Section 1021.5 provides in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." This sets forth the so-called private attorney general doctrine, which is an exception to the usual rule that each party in a lawsuit bear its own attorney fees. (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 390 (*Robinson*.)

Only a "successful party" may obtain an award of attorney fees under section 1021.5, a "successful party" being synonymous with a "prevailing party" as that term is used in other statutes. (*Graham*, *supra*, 34 Cal.4th at p. 570.) Success "generally involves obtaining a favorable judicial decision, i.e., a judicially sanctioned or recognized change in the legal relationship of the parties." (*Marine Forests Society v. California Coastal Com.* (2008) 160 Cal.App.4th 867, 877 (*Marine Forests*).) A plaintiff who does not obtain judicial relief may be entitled to fees under section 1021.5 under the "catalyst theory," which permits an award "even when the litigation does not result in a judicial resolution if the defendant changes its behavior substantially because of, and in the manner sought by, the litigation." (*Graham*, 34 Cal.4th at p. 560.)

To recover section 1021.5 attorney fees as a successful or prevailing party under a catalyst theory, "a plaintiff must establish that (1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) that the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense . . . ; and (3) that the plaintiff[ ] reasonably attempted to settle the litigation prior to filing the lawsuit." (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608 (*Tipton-Whittingham*); *Westside Community for Independent Living, Inc. v. Obledo* (2006) 33 Cal.3d 348, 353; see *Cates v. Chiang* (2013) 213 Cal.App.4th 791, 812;

8

*Marine Forests*, *supra*, 160 Cal.App.4th at pp. 878-879.)  Key to this case is the first element:  did Washoe obtain the primary relief it sought in *Washoe I*?

We conclude it did not.  The petition in *Washoe I* sought to set aside the certification of the EIR and stop the Project.  One cause of action alleged violations of CEQA, the most serious being the challenges to the substance and adequacy of the EIR itself.  A second cause of action alleged the Project would violate the Wildlife Conservation Law, on the theory the relocation of the golf course to what was formerly designated a state park would violate that law.  The prayer of the petition asked the court to issue a writ setting aside the approvals and enjoining further work on the Project.  Although the petition alleged the approvals were defective because they were unaccompanied by CEQA findings, an SOC, or an MMRP, the *primary* goal of the action was not to correct these deficiencies but to prevent or alter the plans to relocate the golf course as part of the Project.

The *Washoe I* petition did not accomplish this primary goal.  The January 2012 approvals included the findings, SOC, and MMRP that had been missing from the October 2011 approvals, but the end result was the same—certification of the same EIR, amendment of the general plan, reclassification/adjustment of the State Park and Recreation Area boundaries, and approval of the same version of the Project.  Moreover, the Department's October 18 resolution certifying the EIR had stated an SOC would be adopted, and the EIR contemplated an MMRP would be adopted after project approval.  Washoe has not established the content of the SOC or MMRP adopted in January was influenced in any way by *Washoe I*.  "Attorney fees may not be obtained, generally speaking, by merely causing the acceleration of the issuance of government regulations or remedial measures, when the process of issuing those regulations or undertaking those measures was ongoing at the time the litigation was filed."  (*Tipton-Whittingham*, *supra*, 34 Cal.4th at p. 609.)  So far, Washoe has effectuated only a "limited 'do-over.' " (*Center for Biological Diversity v. California Fish and Game Com.* (2011) 195 Cal.App.4th 128, 140-141; see *Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330,

9

364-369 [plaintiffs not successful parties under § 1021.5 when litigation resulted in reconsideration of agency decision, but agency reached the same result].)

Although an order awarding attorney fees under section 1021.5 is generally reviewed for abuse of discretion (*Graham*, *supra*, 34 Cal.4th at p. 578), "the court does not have the discretion to award such fees unless the statutory criteria have been met as a matter of law. Where the material facts are undisputed, and the question is how to apply statutory language to a given factual and procedural context, the reviewing court applies a de novo standard of review to the legal determinations made by the trial court." (*McGuigan v. City of San Diego* (2010) 183 Cal.App.4th 610, 623.) The undisputed material facts show Washoe did not obtain the primary relief it sought in *Washoe I*; at most, it caused the agencies to reissue resolutions that were substantively the same as those challenged by the litigation, while at the same time adopting environmental documents they had planned to adopt anyway.

We would reach the same conclusion if we applied an abuse of discretion standard, as we are urged to do by Washoe. Though the trial court in this case issued a comprehensive and thoughtful written order, it misstated the "primary relief" component of the catalyst theory, indicating Washoe was only required to prove the change caused by *Washoe I* was on a "significant issue." "In cases where judicial relief was obtained, it is sufficient if the plaintiff achieved partial success or succeeded on *any* significant issue in the litigation which achieved *some* of the benefit the plaintiff sought in bringing suit. [Citation.] However, in catalyst cases, the defendant must have provided plaintiff with the *primary* relief sought." (*Marine Forests*, *supra*, 160 Cal.App.4th at p. 878.) In light of this error of law by the trial court, its decision was an abuse of discretion. (*Robinson*, *supra*, 202 Cal.App.4th at p. 391 ["If the superior court's order is not consistent with the applicable principles of law, the order necessarily falls outside the scope of the superior court's discretion"].)

An award of fees is not compelled by the decisions in *Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362 (hereafter *POW I*) and *Protect Our Water v. County of Merced* (2005) 130 Cal.App.4th 488 (hereafter *POW II*), on which Washoe

10

relies.  In *POW I*, a citizens' group filed a petition for writ of mandate challenging the County's issuance of a conditional use permit allowing mining operations near a river. (*POW I*, *supra*, 110 Cal.App.4th at pp. 365-366.)  The petition challenged the sufficiency of the EIR, the approval of the project in the face of feasible alternatives, the failure of the final EIR to respond to public comments, and the lack of substantial evidence to support the County's findings under CEQA.  (*Id*. at p. 368.)  The Court of Appeal reversed a trial court order denying the petition, because the administrative record was so deficient it was impossible to determine whether the findings required for project approval had actually been made.  (*Id*. at pp. 373-374.)  The citizens' group sought attorney fees on remand, arguing that even though the court had not reached the merits, it was a successful party under section 1021.5 because it obtained the relief sought in the petition for writ of mandate.  (*POW II*, *supra*, 130 Cal.App.4th at pp. 491-492.)  The Court of Appeal agreed and reversed a lower court order denying attorney fees.  (*Id*. at p. 494.)  "The case did not result in a stalemate between the parties.  Reduced to basics, the County was the loser.  POW sought an order setting aside the County's approval of the project.  Our Opinion directed exactly that result. . . .  We did not reach the merits of POW's claims because there was another ground upon which to grant the requested relief—the inadequate substantive record."  (*Id*. at pp. 494-495.)

The current case is unlike *POW I* and *POW II*.  For one thing, although the *POW II* court cited *Graham*, *supra*, 34 Cal.4th 553 and noted the catalyst theory (*POW II*, *supra*, 130 Cal.App.4th at p. 493), it was not in fact a catalyst case.  The catalyst theory applies to a plaintiff who has not obtained judicial relief, and in *POW I*, the plaintiff obtained a court order directing the County to set aside its approval of a project.  (See *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1346-1347; *Bowman v. City of Berkeley* (2005) 131 Cal.App.4th 173, 178 [distinguishing "primary relief" necessary for § 1021.5 fees under catalyst theory from "significant benefit" necessary to uphold such fees where judicial relief has been granted].)  Additionally, the plaintiff in *POW I* and *POW II* obtained the specific relief it sought—an order setting aside the approval of the challenged project—albeit on procedural grounds.  Here, the

11

EIR has not been modified, the approvals have not been set aside, and it appears the SOC and MMRP would have been adopted even in the absence of the litigation.

The trial court observed in its written order that because the January approvals effectively deferred any challenge to the underlying project, "Washoe . . . obtained as much as it could have achieved" in *Washoe I*. That may be, but it does not change the fact Washoe did not obtain the *primary* relief sought in the petition. Washoe's primary claims are still pending in *Washoe II*, and at the conclusion of that case, the court will be in a position to assess whether it is a successful or prevailing party. Nothing in our decision here should be construed as limiting Washoe's ability at that time to seek attorney fees under section 1021.5 to the extent appropriate; we simply conclude Washoe's limited success to date does not render it a "successful party" under the catalyst theory.[5]

Our conclusion Washoe is not a "successful party" under section 1021.5 makes it unnecessary to consider whether the other elements of section 1021.5 were satisfied or whether the trial court erred in awarding fees for attorney time expended after the January 2012 approvals that rendered *Washoe I* moot.

## III. DISPOSITION

In Court of Appeal case number A140041, the order awarding attorney fees under section 1021.5 is reversed and Washoe's cross-appeal is dismissed as abandoned. Court of Appeal case number A139197, filed by Washoe, is dismissed as abandoned. The Department and the Commission are entitled to recover ordinary costs on appeal.

---

[5] At the hearing on the motion for attorney fees, counsel for the Department and the Commission advised the court its clients would raise no procedural challenge to a motion for fees incurred by Washoe during *Washoe I* if Washoe were to be the successful or prevailing party in *Washoe II*.

12

_____

NEEDHAM, J.

We concur.

_____

SIMONS, Act. P. J.

_____

BRUINIERS, J.