Filed 4/22/21  Frausto v. Cal. Highway Patrol CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| YOLANDA FRAUSTO et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>CALIFORNIA HIGHWAY PATROL et al.,<br><br>        Defendants and Respondents. | A159504<br><br>(Alameda County<br>Super. Ct. Nos. RG16809897<br>& RG17857166) |

John Anthony Cornejo died of a methamphetamine overdose after having been arrested by California Highway Patrol (CHP) officers during a traffic stop and observed to put in his mouth and swallow something he insisted was gum, not drugs.  Plaintiffs, his parents, prevailed in a wrongful death suit predicated on the negligence of the officers who took Cornejo to jail rather than to the hospital.  After this court affirmed the judgment, plaintiffs sought an award of attorney fees under Code of Civil Procedure section 1021.5.[1]  This appeal is from the trial court's denial of the motion for attorney fees.  We affirm.

---

[1] Further statutory references will be to the Code of Civil Procedure except as otherwise specified.

## BACKGROUND

The underlying facts are explained at length in our opinion on defendants' appeal from the judgment in plaintiffs' favor, *Frausto v. California Highway Patrol* (2020) 53 Cal.App.5th 973 (*Frausto*). In brief, during a traffic stop about 4:00 a.m., officers observed Cornejo put something in his mouth and begin chewing. Cornejo said it was gum and, when told to spit it out, became very nervous and backed away from the officers; a brief struggle ensued and Cornejo was taken into custody. He said he had swallowed the gum and, when asked if he swallowed drugs, insisted it was only gum despite officers' warnings that he would need medical attention if he had ingested drugs. Cornejo did not exhibit signs of being under the influence of a stimulant or being in need of medical attention. A search of his vehicle revealed a methamphetamine pipe. Although it was denied by the officers at trial, the probable cause declaration written after the arrest described officers having seen Cornejo put what looked like a plastic baggie in his mouth, and directing him to spit out "the bag."

Officers transported Cornejo to the Glenn E. Dyer Detention Facility, where they informed the receiving deputy sheriff that Cornejo had swallowed something he said was gum; they did not report that Cornejo might have swallowed a plastic baggie they believed contained a controlled substance. At the jail, Cornejo declined multiple offers of medical attention. He was subsequently found on the floor of a holding cell with foam in his mouth and taken by ambulance to the hospital, where he died of acute methamphetamine poisoning.

According to the evidence at trial, the California Highway Patrol Safety Manual (CHP Manual) states that officers "shall arrange for a medical examination whenever a prisoner appears to be in need of or requests

2

medical attention, regardless of outward symptoms of illness or injury." Officers testified that whether this policy would require taking an arrestee suspected of ingesting drugs to the hospital would depend on circumstances such as whether the arrestee exhibited signs of potential overdose, what the arrestee was seen ingesting, and what the arrestee claimed to have swallowed. The officer who conducted the traffic stop acknowledged that the policy was included in his training, that he would have an obligation to call for medical assistance if he thought Cornejo swallowed drugs, and that he told officers at the scene he believed Cornejo had swallowed a controlled substance.

Plaintiffs sued the CHP and individual CHP officers in state court for negligence, wrongful death, survival action and violation of the Tom Bane Civil Rights Act (Bane Act) (Civ. Code, § 52.1 [interference with legal rights by threat, intimidation or coercion]). The case was removed to federal court after the complaint was amended to include a cause of action for violation of civil rights under section 1983 of title 42 of the United States Code; the federal court granted the defendants' motion for summary judgment on the federal claim and declined to exercise jurisdiction over the state claims. Plaintiffs then returned to state court with a complaint against the CHP and several of its officers. The trial court sustained defendants' demurrer to the Bane Act cause of action without leave to amend and granted defendants' motion for judgment on the pleadings as to the survival action, and the case ultimately went to trial solely on the negligence claim. The jury returned a special verdict against defendants in the amount of $827,544.00, allocating comparative fault 35 percent to one of the officers, 13 percent to another, 30 percent to the third, and 22 percent to Cornejo. The resulting recovery for plaintiffs was $645,484.32. After judgment was entered, defendants

3

unsuccessfully moved for judgment notwithstanding the verdict. Defendants appealed, and we affirmed the judgment.

Meanwhile, on December 20, 2018, plaintiffs filed a motion for attorney fees pursuant to Code of Civil Procedure section 1021.5.[2] The trial court's order denying this motion was filed on December 19, 2019, and this appeal followed.

## DISCUSSION

Section 1021.5 authorizes a court to "award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Section 1021.5 "codifies the private attorney general doctrine and acts as an incentive to pursue ' " 'public-interest litigation that might otherwise have been too costly to bring.' " ' " (*Hall v. Department of Motor Vehicles* (2018) 26 Cal.App.5th 182, 188.) To obtain fees, the moving party must establish " '(1) he or she is a "successful party"; (2) the action has resulted in the enforcement of an important right affecting the public interest; (3) the action has conferred a significant benefit on the public or a large class of persons; and (4) an attorney fees award is appropriate in light

---

[2] The motion also sought attorney fees under section 2033.420, but this appeal does not challenge the trial court's denial of the motion on that ground.

4

of the necessity and financial burden of private enforcement.' " (*Canyon Crest Conservancy v. County of Los Angeles* (2020) 46 Cal.App.5th 398, 408 (*Canyon Crest*).)

"Since section 1021.5 states the criteria supporting a grant of fees in the conjunctive, 'each element must be satisfied to justify a fee award.' (*Children & Families Com. of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 55 (*Children & Families*).) However, this is not a purely objective analysis. Rather, in considering a fee request made pursuant to section 1021.5, the trial court, ' " '[utilizing] its traditional equitable discretion,' . . . 'must *realistically* assess the litigation and determine, *from a practical perspective*' [citation] whether or not the statutory criteria have been met." ' " (*City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688, 697–698, quoting *Summit Media, LLC v. City of Los Angeles* (2015) 240 Cal.App.4th 171, 187.)

"Generally, a trial court's ruling on a request for attorney fees under section 1021.5 is reviewed for abuse of discretion. (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251.)" (*Children & Families, supra,* 228 Cal.App.4th at p. 57.) " 'Whether the statutory requirements have been satisfied so as to justify a fee award is a question committed to the discretion of the trial court, unless the question turns on statutory construction, which we review de novo.' (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 152.) Under the abuse of discretion standard, we presume the trial court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise." (*Canyon Crest, supra,* 46 Cal.App.5th at pp. 408–409.)

Plaintiffs urge us to review their entitlement to attorney fees de novo because, having affirmed the judgment in plaintiffs' favor in *Frausto,* our

ability to assess the importance of the right enforced and benefit to the public is as good as or better than the trial court's. " '[W]hen the successful legal action resulted in a published appellate opinion,' the appellate court 'is in at least as good a position as the trial court to judge whether the legal right enforced through its own opinion is "important" and "protects the public interest" and whether the existence of that opinion confers a "significant benefit on the general public or a large class of persons." ' " (*Canyon Crest, supra,* 46 Cal.App.5th at p. 409, quoting *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 5, 8 (*Police Protective League*).)

Defendants counter that we cannot consider our *Frausto* opinion because it was filed some eight months after the trial court's order denying attorney fees and, "[i]t is an elementary rule of appellate procedure that, when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.) This rule is inapposite to plaintiffs' point. A published appellate opinion in a case in which attorney fees have been sought pursuant to section 1021.5 is not the equivalent of factual evidence the trial court was unable to consider, such as the postjudgment insolvency of a party at issue in *Reserve Insurance Co.* The significance of the appellate opinion is simply that the appellate court has considered the right at issue and having done so, is in a particularly good position to assess certain of the factors bearing on the attorney fees question.[3]

---

[3] *Police Protective League, supra,* 188 Cal.App.3d at pages 8 and 9, explained: "[A]t least two of the four elements of the section 1021.5 test are issues more easily evaluated by appellate courts than by trial courts. Normally the appellate court will be in a better position to assess whether a

We need not resolve the parties' dispute over the standard of review, however, as our conclusion would be the same whether we review the trial court's decision de novo or for abuse of discretion.

Only one aspect of the multi-pronged section 1021.5 analysis is at issue on this appeal. The trial court found most of the factors supported an attorney fees award: The plaintiffs were the prevailing parties at trial; the financial analysis pointed in favor of an award because the "potential payoff" was "speculative at best" and "the costs and fees necessary to prosecute the case to conclusion stood to be substantial"; and the issue of "providing medical care and assistance to detainees implicates an important public right, or is a right that affects large numbers of people or the general public." Nevertheless, the court denied the motion for attorney fees because it

given legal action has had a significant impact on the law. . . . Except in rare situations this does not require either court to make factual findings based on conflicting testimony from live witnesses of varying credibility. It is in the true sense a question of law. . . . [¶] . . . . How many people will receive what kind of benefit, and how much, as a result of a given legal action is usually more of a value judgment than an issue of fact. And most often it is a value judgment about legal effects and the like which appellate courts are well situated to make." (*Police Protective League, supra,* 188 Cal.App.3d at pp. 8–9.)

*Police Protective League, supra,* 188 Cal.App.3d 1, differed from the present case in that the published appellate opinion was issued prior to any determination of entitlement to fees: The appellate court reversed the trial court's denial of a petition for writ of mandate and remanded for determination of plaintiff's motion for attorney fees, which the trial court had not previously considered because it had denied the writ petition. That the trial court here rendered its decision on attorney fees prior to issuance of our opinion on the merits of the underlying controversy does not make *Police Protective League*'s discussion any less relevant. As the *Police Protective League* court observed, "If there ever was a question an appellate court is better equipped to decide than a trial court, it is whether the appellate decision it issued 'enforced an important right.'" (*Id.* at pp. 8–9.)

7

concluded the case "did not enforce or vindicate an important right affecting the public interest."

The trial court noted that the constitutional and statutory claims plaintiffs initially alleged had been removed from the case by the time it went to trial, and only the wrongful death claim went to the jury. Although the court conceded common law rights might provide the basis for a fees award under section 1021.5 in "limited circumstances," it found the present case inappropriate for such an award because at the time of Cornejo's arrest, the CHP "had in place a policy that required detainees to be taken to the hospital if they were in need of medical care, or if they manifested symptoms that suggested that medical care was required or warranted," and the officer defendants "were clearly aware of and had been trained in the policy." That the officers "chose to ignore the policy, made a mistake or perhaps even acted with malice toward Mr. Cornejo," the court reasoned, "does not detract from one, inconvenient truth—in hindsight, Mr. Cornejo should have been taken to the hospital. It does also not detract from yet a second inconvenient truth, one that Judge Petrou cited in dismissing the Bane Act claim on demurrer: That the defendants advised Mr. Cornejo that if he had swallowed drugs, he would probably need medical treatment, but that Cornejo repeatedly denied having swallowed drugs or requiring medical treatment. Given that the (dismissed) defendant [CHP] had a policy in place that required appropriate medical treatment to be provided to detainees when necessary, it is unclear (and plaintiffs have not articulated on these facts) what important public right has been enforced by the verdict in this case such that the court could

8

justifiably award fees pursuant to section 1021.5."[4] In short, the court concluded an award under section 1021.5 was unwarranted "based on the jury finding of negligence."

Plaintiffs complain that the trial court erred in focusing on the dismissal of their civil rights claims and diminishing the importance of the right at stake. Plaintiffs recognize that the trial court explicitly acknowledged both the importance of a detainee's right to necessary medical treatment and the fact that a section 1021.5 fees award may be based on common law rights. They argue, however, that the court framed the case too narrowly and its comments on the need for officers to have taken Cornejo to the hospital and Cornejo's refusal to admit swallowing drugs imply that Cornejo's comparative fault "somehow diminished or affected whether the lawsuit was addressing an important public right."

We disagree with plaintiffs' reading of the trial court's decision. The court's point was that because the CHP had a policy requiring provision of medical treatment to detainees when necessary, the issue in this case was the reasonableness of the officers' failure to provide what hindsight showed to be necessary treatment in light of Cornejo's concealment of the facts that would have made the need for treatment apparent. In other words, the case was not about enforcing the principle that detainees have a right to necessary medical treatment but rather about determining whether these officers

---

[4] The court's apparent reference to CHP having been dismissed as a defendant is curious. CHP was not dismissed; the judgment specifically awarded noneconomic damages against CHP together with each of the individual defendants, according to each individual defendant's allocated percentage of fault, as CHP's liability was solely derivative of the individual officers' liability. This apparent error in the court's decision does not affect the validity of its reasoning and conclusions.

provided the requisite medical treatment for this particular detainee in these particular circumstances.

The cases plaintiffs offer as examples of courts enforcing important rights for purposes of section 1021.5 involved litigation that forced defendants to alter their conduct in recognition of a right the defendants had been violating. The plaintiffs in *Press v. Lucky Stores* (1983) 34 Cal.3d 311, who were gathering signatures outside a supermarket in an attempt to qualify an initiative for the ballot, obtained an injunction after store officials ordered them to leave the premises, thereby requiring the defendant to allow them this exercise of established constitutional rights to free speech and petition and enabling the plaintiffs to gain access to additional shopping centers in the state. In *Skinner v. Ken's Foods, Inc.* (2020) 53 Cal.App.5th 938, 942, litigation challenging the labelling on salad dressing resulted in the defendant changing its misleading labeling and advertising practices. *Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, invalidated an ordinance adopted by a city council that purported to amend a contract so as to permit action violating a local proposition regulating billboards. *Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, enjoined private landowners from interfering with access to a public easement across their property.

As the trial court explained, the present case is distinctly different—despite the undeniable importance of detainees' right to necessary medical treatment. According to the evidence at trial, at the time of Cornejo's arrest, an existing CHP policy required provision of necessary medical care to detainees, and the officers involved in Cornejo's detention and arrest were aware of and trained in that policy. The question presented to the jury was whether the defendant officers acted reasonably on the facts of this case. The

10

jury's verdict did not require any change in policy or conduct: It was and remains the duty of individual officers to evaluate the circumstances in any given incident to determine whether a detainee is in need of medical care.

Plaintiffs argue that this case "defin[ed] the obligations of the state to care for those in its custody," as defendants denied they had "a duty to provide medical care to people in their custody" and our opinion in *Frausto* established as an issue of first impression that such a duty exists. Plaintiffs' characterization is inaccurate.

First, in arguing the "core" of this case was CHP's duty to provide medical care to those in its custody, plaintiffs state that defendants argued the absence of such duty in their motion for judgment notwithstanding the verdict and in the prior appeal. Defendants did not make such an argument in their motion for judgment notwithstanding the verdict—indeed, plaintiffs maintained on the prior appeal that defendants were precluded from arguing lack of duty because they did *not* make this argument in the motion for judgment notwithstanding the verdict or otherwise at trial. (*Frausto, supra,* 53 Cal.App.5th at p. 991.) On appeal, defendants argued there was no duty to provide medical care *in the circumstances of this case.* (*Ibid.*) Our opinion focused on duty created by virtue of the special relationship doctrine, which defendants argued was inapplicable because Cornejo created his own peril by swallowing the methamphetamine, the officers did not take affirmative action increasing the peril, Cornejo did not detrimentally rely upon the officers for assistance, and there was no basis for the officers to override Cornejo's constitutional right to refuse medical treatment. (*Ibid.*) In rejecting these arguments and holding that a special relationship was established once Cornejo was taken into custody, we held the officers had a duty *to use reasonable care.* (*Id.* at pp. 992–993.) But this was never really

11

disputed:  As we have said, the CHP Manual stated officers were required to provide necessary medical care, and the officers acknowledged this in their testimony.  The question put to and decided by the jury—as plaintiffs expressly recognize—was whether the officers "act[ed] reasonably when they decided not to take Mr. Cornejo to the hospital."

We observed in *Frausto* that "[i]n framing the question as whether the officers had a duty to take Cornejo to the hospital rather than to jail, defendants muddle the distinctions between the existence and scope of duty and breach of the standard of care.  Once Cornejo was in custody, he was subject to the control of the officers and no longer in a position to attend to his own medical needs.  At this point, regardless of Cornejo's role in creating his predicament, the officers had a duty to use reasonable care in responding to the situation.  Whether the officers should have recognized a need for immediate medical attention despite the absence of symptoms of drug use and Cornejo's disclaimers and rejection of offers of medical assistance was a question of fact, as was the question whether the duty of care was satisfied by taking Cornejo to jail rather than the hospital.  These were questions for the jury, not legal questions delineating the scope of the duty." (*Frausto, supra,* 53 Cal.App.5th at p. 993.)

Plaintiffs, in attempting to make their case for section 1021.5 attorney fees, make the same mistake of muddling the concepts of duty and breach of the standard of care.  Cornejo's death was undeniably tragic.  But this case is more aptly characterized as penalizing the officers who acted negligently, and providing a measure of compensation to Cornejo's parents, than as establishing or enforcing a right to necessary medical treatment that will inure to the significant benefit of a large class of persons.  We agree with the

12

trial court's conclusion that an award of attorney fees pursuant to the private attorney general doctrine is not appropriate.

## DISPOSITION

The order is affirmed.

_____
Kline, P.J.

We concur:

_____
Stewart, J.

_____
Miller, J.

*Frausto et al. v. California Highway Patrol et al.* (A159504)