Filed 7/27/22  Williams v. County of Sonoma CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

CATHERINE WILLIAMS,

      Plaintiff and Appellant,

v.

COUNTY OF SONOMA,

      Defendant and Respondent.

A162966

(Sonoma County
Super. Ct. No. SCV-261355)

Plaintiff Catherine Williams, after successfully defending her jury verdict against an appeal by defendant County of Sonoma (County), sought appellate attorney fees pursuant to Code of Civil Procedure section 1021.5.[1] The trial court denied fees, and we affirm.

BACKGROUND

"On July 10, 2016, Plaintiff and a friend began a 30-mile bicycle ride to train for an upcoming organized, noncompetitive, long-distance ride.  As they biked down a hill on a road maintained by the County, they encountered a pothole measuring four feet long, three feet four inches wide, and four inches

---

[1] All undesignated section references are to the Code of Civil Procedure.

1

deep.  Plaintiff was traveling at least 25 miles per hour and, by the time she saw the pothole, was unable to avoid it.  Her bicycle struck the pothole and she was thrown to the pavement, incurring serious injuries.  The pothole had been reported to the County more than six weeks earlier, on May 25, 2016. [¶] Plaintiff sued the County for dangerous condition of public property (Gov. Code, § 835).  A jury found for Plaintiff, allocating 70 percent of the fault to the County and 30 percent to Plaintiff.  Plaintiff was awarded more than $1.3 million in damages." (*Williams v. County of Sonoma* (2020) 55 Cal.App.5th 125, 128, fn. omitted (*Williams I*).)

The County appealed, arguing Plaintiff's claim was barred by the primary assumption of risk doctrine.  (*Williams I, supra,* 55 Cal.App.5th at p. 128.)  This doctrine, when " '[a]pplied in the sporting context, ... precludes liability for injuries arising from those risks deemed inherent in a sport; as a matter of law, others have no legal duty to eliminate those risks or otherwise protect a sports participant from them.' [Citation.]  A limited duty may nonetheless be owed: '[U]nder the primary assumption of risk doctrine, [certain defendants] have no duty to eliminate those risks [inherent in a recreational activity], but do owe participants the duty not to unreasonably increase the risks of injury beyond those inherent in the activity.' " (*Id.* at p. 129.)

This court rejected the County's argument that Plaintiff's claim was barred by the primary assumption of risk doctrine.  We assumed, without deciding, that the doctrine applied to claims against public entities for dangerous conditions of public property, and that Plaintiff's "long-distance, recreational cycling constitutes the type of activity covered by the primary assumption of risk doctrine." (*Williams I, supra,* 55 Cal.App.5th at p. 130.) Guided by the policy underlying the doctrine, we found the County had "a

2

limited duty not to increase the inherent risks" of that activity because, since "the County already owed a duty to other road users to repair the pothole [given the size of the pothole and uncontradicted testimony that it posed a hazard to other road users], we see little risk that imposition of the same duty with respect to long-distance, recreational cyclists would lead the County to take steps that would fundamentally alter the nature of the activity." (*Id.* at p. 132.) Finally, in part relying on the County's forfeiture of certain arguments, we found the County's failure to repair the pothole was a breach of that duty. (*Id.* at pp. 133–134.)

On remand, Plaintiff filed a motion pursuant to section 1021.5 for attorney fees for work performed on the appeal only. The trial court denied the motion, finding: "Although the Court agrees that this action conferred a significant benefit to a large class of people, Plaintiff has not met her burden to show the necessity and financial burden of private enforcement are such that an award of attorneys' fees is appropriate in this case."

DISCUSSION

"[A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." (§ 1021.5.)

"[T]he necessity and financial burden requirement ' "really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful

3

party's attorneys." ' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214 (*Whitley*).) "In determining the financial burden on litigants, courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield. ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends [the claimant's] personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to [the plaintiff's] individual stake in the matter.' [Citation.]" ' [Citation.] 'This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit.' " (*Id.* at p. 1215.) To so "weigh[] costs and benefits[,]" the court must estimate the value of the successful litigant's expected benefits discounted by the probability of success, determine the cost of the litigation, and "make the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case.... [A] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' " (*Whitley, supra,* 50 Cal.4th at pp. 1215–1216.)[2]

The trial court weighed the costs and benefits as follows: "Plaintiff seeks a lodestar fee award of $112,710 yet the expected monetary value of the case at the time of the appeal must be judged by the net value of the jury's verdict, *i.e.,* $1,326,524.15. Even when the Court discounts this recovery by 50% based on the probability of success, Plaintiff's net recovery 'exceeds by a

---

[2] This " 'value judgment' . . . appears to encompass the criterion set forth in subdivision (c) of section 1021.5 that a court considering fees must determine whether 'such fees should not in the interest of justice be paid out of the recovery, if any.' " (*City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688, 700 (*City of Oakland*).)

substantial margin the actual litigation costs.' … Thus, when the Court considers the expected value of the case at the time of the appeal and the cost of the appeal, Plaintiff has failed meet her burden to show the necessity and financial burden of the case are such as to make the award appropriate."

Plaintiff does not dispute the trial court's calculation of the costs and benefits or its conclusion that her expected recovery substantially exceeded her actual costs.  Instead, she claims fees should nonetheless have been awarded pursuant to authority that "when the ratio between public benefits and the litigant's expected benefits is high the court should award fees even though the ratio between expected litigant benefits and litigant costs is high."[3]  (*Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 10 (*Police Protective League*).)

*Police Protective League* explained the consideration of public benefits and a litigant's expected benefits: "Where the benefits achieved for others are very high it will be more important to encourage litigation which achieves those results.  Accordingly, it will be more important to offer the bounty of a court-awarded fee than where the public benefits are less significant.  Thus, the courts should be willing to authorize fees on a lesser showing of need than they might where the public benefits are less dramatic.  This means the court sometimes should award fees even in situations where the litigant's own expected benefits exceed its actual costs by a substantial margin."  (*Police Protective League, supra,* 188 Cal.App.3d at p. 10.)

Plaintiff points to *City of Oakland, supra,* 29 Cal.App.5th 688, in which an association of public employee retirees intervened in the city's lawsuit

---

[3] The parties dispute whether our review is de novo or abuse of discretion.  We need not and do not decide the issue because, under either standard of review, our conclusion would be the same.

against the retirement board claiming the retirees were being overcompensated in certain ways. (*Id.* at pp. 693, 695.) The association lost in the trial court, which ordered the retirement board to collect overpayments, but prevailed in certain respects on appeal, including on its argument that the retirement board had the discretion to determine whether and how any overpayments should be recovered. (*Id.* at pp. 695–696.) The estimated cost of litigation was $500,000, and the total estimated value for the association was $3.5 million. (*Id.* at pp. 700, 702.) The Court of Appeal concluded the case was an "unusual case" warranting a fee award even though the "estimated value numbers substantially exceed[ed] costs" because of "the relative poverty of the Association and its members" and because the expected monetary value primarily consisted of avoiding repayments and therefore "was not of the kind that could easily be accessed to fund the litigation."[4] (*Id.* at pp. 703, 708.)

Plaintiff also relies on *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407 (*Beasley*), disapproved on another ground as stated in *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1151, in which a class of credit card customers successfully sued "to recover excessive fee assessments on behalf of hundreds of thousands of Wells Fargo customers, on the ground the fees were not valid as liquidated damages." (*Beasley,* at p. 1418.) Even assuming that the estimated $2.6 million value of

---

[4] In a separate portion of the analysis, the Court of Appeal held the litigation "vindicat[ed] important rights affecting the public interest" by "successfully litigating to protect both procedural and substantive public pension rights" and "providing less tangible benefits to a much larger groups, including the firefighters also covered by [the retirement system], other members of fluctuating pension systems throughout the state, and California public pensioners generally." (*City of Oakland, supra,* 29 Cal.App.5th at p. 711.)

6

the case substantially exceeded the actual litigation costs of $1.4 million (an issue the Court of Appeal found close), the court held "the public benefits from the litigation are so significant that an award of fees under section 1021.5 is appropriate" because the litigation "directly benefit[]ed hundreds of thousands of Wells Fargo customers" and, because it was "undoubtedly" watched by other banks doing business in California, also provided "an indirect benefit to non-Wells Fargo California customers who could easily number in the millions." (*Id.* at pp. 1416–1417.)

Plaintiff argues her case similarly warrants a fee award despite an expected benefit that admittedly substantially exceeded the litigation costs. She contends her defense of the County's appeal established a "statewide precedent benefitting thousands, if not millions, of California cyclists in the face of determined, high-powered, public-entity opposition," pointing to the publication of the opinion, amicus briefs filed in the appeal and letters opposing the County's request for depublication, and declarations from appellate specialists filed in support of Plaintiff's motion below. The County, in turn, argues our opinion "established no major legal principle," instead narrowly determining only "that public entities *would* owe a limited duty not to increase inherent risks of recreational cycling *if* the primary assumption of risk doctrine applied and *if* it applied to [Plaintiff's] sport."

The significance of our opinion lies somewhere between these two poles. We obviously considered it significant enough to be worthy of publication. (*Police Protective League, supra,* 188 Cal.App.3d at p. 12 ["The fact we or some other appellate court decides to publish an opinion does not conclusively establish the underlying action 'vindicated an important right.' On the other hand, it is strong evidence on that question."].) However, it was decided on narrow grounds, with significant questions left unanswered—including the

7

one attracting an amicus brief in support of Plaintiff—and with the substantial size of the pothole at issue playing a significant role in the conclusion that a limited duty was owed.  (*Williams I, supra,* 55 Cal.App.5th at pp. 130 & fn. 3, 132.)  No additional factors weigh in favor of a fee award, such as Plaintiff's relative poverty or the unavailability of her judgment to be used for attorney fees, as in *City of Oakland.*  In sum, we conclude the appeal is not one of those unusual cases warranting a fee award despite a benefit substantially exceeding the litigation costs.

DISPOSITION

The order is affirmed.  The County is awarded its costs on appeal.


_____

SIMONS, J.

We concur.




_____

JACKSON, P. J.




_____

BURNS, J.




(A162966)